UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM I. BABCHUK, M.D. and WILLIAM I. BABCHUK, M.D., P.C. d/b/a COMPREHENSIVE MEDICAL IMAGING, | ) ) ) | |
| *Plaintiffs*, | ) | 1:13-cv-01376-JMS-DML |
| | ) | |
| *vs.* | ) | |
| | ) | |
| INDIANA UNIVERSITY HEALTH, INC., INDIANA UNIVERSITY HEALTH TIPTON HOSPITAL, INC., MICHAEL L. HARLOWE, JOELLEN SCOTT, CARL M. PAFFORD, DIANNA ANDREWS, KEVIN W. CONDICT, MICHAEL E. HARPER, and RICHARD J. YOUNG, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

## <u>ORDER</u>

Presently pending before the Court are: (1) a Motion for Summary Judgment filed by Defendants Indiana University Health, Inc. ("IU Health"), Indiana University Health Tipton Hospital, Inc. ("Tipton Hospital"), and Michael Harlowe, Joellen Scott, Carl Pafford, Dianna Andrews, Kevin Conduct, Michael Harper, and Richard Young (collectively, "the Individual Defendants"), [Filing No. 64]; and (2) a Motion for Partial Summary Judgment filed by Plaintiffs William Babchuk, M.D. and William I. Babchuk, M.D., P.C. d/b/a Comprehensive Medical Imaging ("Babchuk, P.C."), [Filing No. 100].[1]  Plaintiffs sue Defendants pursuant to 42 U.S.C. § 1983 for violation of their Fourteenth Amendment right to procedural due process in connection with the termination of a contract between Tipton Hospital and Babchuk, P.C., and the suspension of Dr. Babchuk's medical staff privileges at Tipton Hospital.

---

[1] Also pending is Plaintiffs' Request for Oral Argument, [Filing No. 103].  The parties' briefs afforded the Court an adequate basis on which to rule on the pending summary judgment motions without the assistance of oral argument.  The Court therefore denies Plaintiffs' Request for Oral Argument, [Filing No. 103].

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d

[892, 901 (7th Cir. 2003)](). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. [*Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009)](). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. [*Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008)](). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. [*O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011)](). The Court need only consider the cited materials, [Fed. R. Civ. P. 56(c)(3)](), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," [*Johnson*, 325 F.3d at 898](). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. [*Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010)]().

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." [*R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003)](). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." [*Id.* at 648]().

## II.
### BACKGROUND

The Court notes at the outset that the parties have failed to comply with the Court's Practices and Procedures, which provide that "[w]hen citing documents that have been electronically filed, counsel should cite the docket number, the attachment number (if any), and the applicable

.pdf page. For example, '[dkt. 25-2 at 5]' would refer to page five of attachment two to the item filed as docket number 25." [Filing No. 59 at 3.] Instead of following this citation format, Defendants frequently cited the name of the exhibit and sometimes the section or paragraph number, but not the .pdf page number. [*See, e.g.*, Filing No. 65 at 6 (citing to "Tipton Aff. Ex. M (Affiliation Agreement, Sec. 2.5)".] This required the Court to locate the document containing the cited information, then locate the page on which the cited information appeared. While Plaintiffs cited to their exhibits with the docket number, they also did not provide the .pdf page number. This failure to comply with the Court's Practices and Procedures has made the Court's review of the pending motions unnecessarily and extremely cumbersome, particularly where – as here – the parties rely upon a large number of lengthy exhibits. The Court does not have a duty to "scour every inch of the record" to find potentially applicable evidence, *Johnson*, 325 F.3d at 898, but has done its best to locate the information the parties have cited. However, the parties should ensure that they follow the Court's Practices and Procedures in the future.

The Court finds the following to be the undisputed facts, supported by admissible evidence in the record:

## A. Formation and Structure of Tipton Hospital and IU Health

IU Health (formerly Clarian Health Partners, Inc.) is a private Indiana nonprofit corporation, with two classes of members – the University Class (the Trustees of Indiana University) and the Methodist Class (members of the Methodist Health Group, which is a nonprofit corporation). [Filing No. 66-11 at 9.] A Definitive Health Care Resources Consolidation Agreement among the Trustees of Indiana University, Methodist Health Group, Inc., Methodist Hospital of Indiana, Inc., and Consolidated Health Group, Inc. (the "Consolidation Agreement") provides that IU Health is not a religious organization, nor is it "part of Indiana University, the School of Medicine or the

State or any political subdivision of the state and is not a public or state agency within the meaning of the various statutes conferring rights and duties on public or state agencies." [Filing No. 66-11 at 9.]

IU Health is controlled by a Board of Directors which consists of thirteen to fifteen members. [Filing No. 66-11 at 20; Filing No. 66-13 at 5.] The University Class elects one director, the Dean of the IU School of Medicine is an ex officio director, the Methodist Class elects one director, the Bishop of the Indiana Area of the United Methodist Church (or a designee) is an ex officio director, the President and CEO of IU Health is an ex officio director, and nine to ten at-large directors are jointly elected by the vote of both member classes. [Filing No. 66-13 at 5-6.]

The Trustees retain the authority to operate the IU School of Medicine, and retain certain authority related to the operation of Riley Children's Hospital (which is statutorily designated as a department of the School of Medicine). [Filing No. 66-11 at 21-22.] The University Class also retains certain authority, but that authority does not include authority related to privileging or peer review decisions in general, or at Tipton Hospital. [Filing No. 66-11 at 22-23.] The Trustees have delegated certain authority to IU Health for the operations of "Indiana University Hospitals," which is defined in the Definitive Agreement to include only Indiana University Hospital and Outpatient Center and James Whitcomb Riley Hospital for Children, and does not include Tipton Hospital. [Filing No. 66-11 at 14.] The Definitive Agreement does not give the Trustees any authority over peer review or privileging decisions for IU Health facilities in general or for Tipton Hospital in particular. [Filing No. 66-11 at 21-22.] IU Health uses the name and marks of Indiana University pursuant to a licensing agreement that permits IU Health affiliates like Tipton Hospital to sublicense the name and marks. [Filing No. 66-15.]

Tipton Hospital is a private, non-profit corporation. [Filing No. 66-8.] The former county hospital in Tipton, Indiana transferred its assets and operations to Tipton Hospital through an Affiliation and Asset Purchase Agreement Among Clarian Health Partners, Inc., Tipton Hospital, Inc., The Board of Trustees of Tipton County Memorial Hospital, and Tipton County, Indiana (the "Affiliation Agreement"). [Filing No. 66-6.] Tipton County leases the hospital building and grounds to Tipton Hospital. [Filing No. 66-6.] Tipton County does not retain authority over Tipton Hospital's day-to-day operations, or its privileging or peer review decisions. [Filing No. 66-6; Filing No. 66-17 at 1-2.]

IU Health is Tipton Hospital's sole member, and has not reserved authority for the day-to-day operations of Tipton Hospital or privileging or peer review. [Filing No. 66-3; Filing No. 66-6.] IU Health has the right to appoint one more than one-half of Tipton Hospital's Board of Directors, and the remaining directors are elected by the Board. [Filing No. 66-3 at 10; Filing No. 66-6.] IU Health's power to appoint and remove directors is "[s]ubject to the Board's approval." [Filing No. 66-3 at 13.] Tipton Hospital's Chief Executive Officer is appointed by the Board of Directors of Tipton Hospital, [Filing No. 66-3 at 17], and is paid by IU Health, [Filing No. 66-16 at 1].

Tipton Hospital is controlled by a Board of Directors, which is responsible for the management, operation, functioning, and control of Tipton Hospital, including privileging decisions for all health care providers within Tipton Hospital. [Filing No. 66-2 at 5; Filing No. 66-3 at 8.] The Board of Directors has delegated to the Medical Staff the day-to-day duties related to privileging and peer review, and the Medical Staff must advise the Board of Directors on those matters. [Filing No. 66-3 at 18-21.] The Medical Staff carries out its peer review duties through peer review

committees including the Patient Care Review Committee ("PCRC") and the Medical Executive Committee ("MEC"). [Filing No. 66-2 at 6; Filing No. 66-3 at 18-21.]

**B. Dr. Babchuk's and Babchuk, P.C.'s Interactions With Tipton Hospital**

Dr. Babchuk is a radiologist, who owns Babchuk, P.C. [Filing No. 1 at 2.] Babchuk, P.C. and Tipton Hospital entered into an Imaging Services Agreement (the "Agreement") on September 4, 2008, which provides that:

> [Babchuk, P.C.] shall designate qualified Physicians who are employees of or under contract with [Babchuk, P.C.] to provide Imaging Services to Patients and shall have, in addition to Hospital non-physician personnel and except as provided hereinafter, the exclusive right to utilize the Department equipment, and to provide Imaging Services in the Hospital….Physicians employed or contracted by [Babchuk, P.C.] to provide coverage shall be required to have been granted privileges for specific procedures through the normal credentialing process of the Hospital and only those privileges granted to individual Physicians will be able to be exercised pursuant to this Agreement.

[Filing No. 66-4 at 3-4.]

The Agreement also provides that, in the event a physician is "deprived of Medical Staff Privileges" at Tipton Hospital, the physician "shall not be permitted to perform any services under this Agreement." [Filing No. 66-4 at 14.] The Agreement states that it can be terminated if either party defaults and the default is not cured within thirty days, or if the terminating party gives the other party 180 days written notice of the intent to terminate. [Filing No. 66-4 at 15.] It also states that if a physician "fails to manage, with reasonable success, professional and personal relationships with members of the Hospital's Medical Staff, Hospital employees, patients, and/or their families, and such failure, in the considered opinion of the Chief Executive Officer, creates a working environment in the Department that is hostile or otherwise detrimental to the personnel or operations of the Department, Hospital shall provide written notice to [Babchuk, P.C.] describing

the situation" and if there is not agreement, a committee will be formed to recommend a solution.
[Filing No. 66-4 at 15.]

Tipton Hospital's bylaws set forth in detail how the medical staff is organized, and provide in relevant part that:

> No physician shall be entitled to membership on the Medical Staff or to the exercise of particular clinical privileges in the Hospital merely by virtue of the fact that he or she is licensed to practice medicine in Indiana or any other state, that he or she is a member of any professional organization or has in the past or presently has any such privileges in the Hospital or another hospital.

[Filing No. 66-3 at 20.]

Dr. Babchuk had medical staff privileges at Tipton Hospital. The Tipton Hospital Medical Staff Bylaws provide that privileges may be summarily suspended "whenever action must be taken immediately in the best interest of patient care or that the failure to take prompt action may result in imminent danger to the life, health, or safety of any such person in the Hospital…and such summary suspension shall become effective immediately upon imposition." [Filing No. 66-2 at 30.] The bylaws also provide that "[t]he reason for the suspension shall promptly thereafter be stated in writing and be given to the member in the same manner as other requests for corrective action." [Filing No. 66-2 at 30.]

On June 26, 2012, Michael Harlowe, President and Chief Executive Officer of IU Health, sent a letter to Dr. Babchuk informing him that his privileges were being summarily suspended for his "apparent failure to carry out [his] obligations in a professional, ethical and lawful manner," and setting forth the specific actions that led to the summary suspension. [Filing No. 67-1 at 1.] The parties do not dispute that the bylaws gave Tipton Hospital the power to summarily suspend Dr. Babchuk's privileges, but do dispute whether Dr. Babchuk's actions warranted a summary suspension.

On June 28, 2012, the PCRC met and voted unanimously to continue Dr. Babchuk's summary suspension, and to recommend that action to the MEC. [Filing No. 67-2 at 1.] The MEC met on July 2, 2012, heard a statement from the Chairman of the PCRC, and voted unanimously to continue Dr. Babchuk's summary suspension. [Filing No. 67-3 at 1-2.] Mr. Harlowe sent Dr. Babchuk another letter on July 5, 2012, advising him of the actions of the PCRC and the MEC, and outlining his rights to a hearing pursuant to Tipton Hospital's bylaws. [Filing No. 67-4 at 1-2.]

On July 27, 2012, Dr. Babchuk requested a hearing regarding the MEC's action in continuing his summary suspension. [Filing No. 67-5 at 1.] The hearing (originally scheduled for August 14, 2012, but postponed at the request of Dr. Babchuk) took place on October 9, 2012, and the Hearing Committee concluded that "Dr. Babchuk did not persuade the committee by testimony or exhibits that the grounds for the summary suspension lacked factual basis or that the basis for the charges or the summary suspension was either arbitrary, unreasonable or capricious. The hearing committee unanimously recommends that the summary suspension of privileges set forth in the July 5, 2012 letter to Dr. Babchuk…be confirmed." [Filing No. 67-7 at 2.] Dr. Babchuk was advised of the Hearing Committee's decision in an October 22, 2012 letter from Dianna Andrews, Chief of Staff of IU Health. [Filing No. 67-8 at 1.] In the letter, Ms. Andrews advised Dr. Babchuk that he was entitled to appeal the decision to the Board of Directors of Tipton Hospital. [Filing No. 67-8 at 1.]

Dr. Babchuk did not request appellate review of the MEC's recommendation from the Board of Directors, and the Board of Directors approved the MEC's recommendation to confirm

the suspension of Dr. Babchuk's privileges on November 29, 2012.  [Filing No. 66-16 at 2.]  Subsequently, Tipton Hospital terminated Babchuk, P.C.'s contract for radiology services.  [Filing No. 66-16 at 3.]

On August 29, 2013, Dr. Babchuk and Babchuk, P.C. filed the instant lawsuit against IU Health, Tipton Hospital, and the Individual Defendants (who hold various positions at Tipton Hospital or IU Health), claiming that Defendants violated their rights to procedural due process under 42 U.S.C. § 1983.  [Filing No. 1.]  Defendants moved for summary judgment, arguing that Plaintiffs cannot establish state action and that, in any event, Plaintiffs did not have a federally protected interest.  [Filing No. 64.]  Plaintiffs opposed Defendants' motion, [Filing No. 106], but also filed a Cross Motion for Partial Summary Judgment the same day, in which they seek only a judgment that Defendants are state actors, [Filing No. 100].  The Court considers both motions below.

### III.
#### DISCUSSION

The Court notes at the outset that Plaintiffs raise arguments in their Motion for Partial Summary Judgment that are actually responsive to the ones raised by Defendants in their Motion for Summary Judgment.  [*See* Filing No. 101.]  It appears to the Court that Plaintiffs' Motion for Partial Summary Judgment may have been filed more as a supplement to their response to Defendants' Motion for Summary Judgment, since Plaintiffs' response brief already exceeded the page limit set forth in the Local Rules.  [*See* Filing No. 106 (Plaintiffs' response brief, which is thirty-six pages), and Local Rule 7-1(e) (setting forth a thirty-five page limit for response briefs).]  The Court has already noted in its January 29, 2015 Order that Plaintiffs' filing of their Motion for Partial Summary Judgment did not comply with the Court's Practices and Procedures, [*see* Filing No. 115], but expresses its concern here that the Motion for Partial Summary Judgment may have been filed to circumvent page limits.  The Court disapproves of this practice, especially given

Plaintiffs' filing of a "Statement of Material Facts Not in Dispute" and "Dr. Babchuk's Contradicting and Additional Material Facts…" as attachments to their response brief, which also allowed Plaintiffs to appear as though they were complying with the thirty-five page limit. [*See* Filing No. 118 at 1 (Magistrate Judge noting that the response brief, with the two attachments, exceeded the page limit for the response and was filed without leave of court).] While Plaintiffs may have technically complied with the rules, they have not complied with the spirit of those rules, and such tactics will not be tolerated in future litigation. In any event, the Court has considered the parties' arguments set forth in all of the briefs submitted.[2]

Plaintiffs bring their claims under 42 U.S.C. § 1983, which "imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States." *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). To prevail on a Section 1983 claim alleging a procedural due process violation, Plaintiffs must first show that the action they complain of is properly considered "state action," then they must also demonstrate that their procedural due process rights were violated by showing that there is: (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

### A. Whether Defendants Are State Actors

In order for Plaintiffs to succeed on their Section 1983 claim, they must establish that Defendants are state actors. *Tunca v. Lutheran General Hosp.*, 844 F.2d 411, 413 (7th Cir. 1988) (citing *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119 (7th Cir. 1986)). The "[u]ltimate issue in determining whether a person is subject to suit under section 1983 is the same question

---

[2] The Court also notes that the parties do not advance arguments in favor or against the Individual Defendants specifically, but rather lump them together with Tipton Hospital and IU Health. Because the parties address all arguments jointly, the Court will do so as well.

posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'…The state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state…" *Ezpeleta*, 800 F.2d at 122. To find that a defendant acted under color of state law, the Court must find "such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009).

Determining whether a party acted under color of state law "constitutes 'one of the more slippery and troublesome areas of civil rights litigation.'" *Id.* The Seventh Circuit Court of Appeals has noted several situations where "private conduct takes on the color of law," including: 'when the state controls a nominally private entity…, when it is entwined with its management or control,…when the state delegates a public function to a private entity,…or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815-16 (7th Cir. 2009).

These different situations "do not so much enunciate a test or series of factors, but rather demonstrate examples of outcomes in a fact-based assessment." *Id.* at 816 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001)); *see also id.* at 295-96 ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'….What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity….[N]o one fact can function as a necessary condition across the board for finding state

action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government"). The bottom line is that determining whether there has been state action requires the Court to sift through the facts and weigh circumstances. *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir. 1999).

Defendants have advanced several arguments to support their conclusion that they are not state actors, and Plaintiffs have pointed to facts which they assert support the opposite conclusion. Indeed, in their response brief Plaintiffs set forth sixty-one paragraphs (covering eighteen pages) of "Evidence Supporting the Conclusion that the Defendants are State, not Private, Actors for the Purpose of 42 U.S.C. § 1983 Liability." [Filing No. 106 at 3-21.] In their reply, Defendants then argue that Plaintiffs' additional "facts" are sometimes supported by inadmissible evidence, that they are "rife with argument, overstatements to the point of outright mischaracterization, and even blatant insertion or deletion of material phrases within direct quotes without use of ellipses or brackets," and that "none of the facts supported by the record suggest that IU Health took action as to [Dr.] Babchuk, or that IU Health or [Tipton Hospital] could be considered state actors for purposes of § 1983 as to [Dr.] Babchuk's summary suspension." [Filing No. 133 at 5.] Defendants then list, and attempt to discredit, Plaintiffs' sixty-one paragraphs of additional facts. [Filing No. 133 at 6-18.]

While the parties may not directly dispute many facts – at least facts that are supported by the record – they do dispute the inferences to be drawn from those facts and whether they render Defendants state actors because of the structural makeup of both IU Health and Tipton Hospital. Because determining whether Defendants are state actors is, in the Seventh Circuit's words, "a fact-based assessment," *Hallinan*, 570 F.3d at 816, the Court finds that a reasonable jury could conclude either that Defendants were acting under color of state law or that they were not. Put

another way, the Court cannot conclude as a matter of law that Defendants were or were not acting under color of state law when they suspended Dr. Babchuk's privileges and terminated the contract with Babchuk, P.C.

Plaintiffs asserted an additional argument in their Motion for Partial Summary Judgment: they contend that Defendants engaged in state action because they are entitled to immunity for peer review activities which, they argue, is a role delegated from the state. [*See* Filing No. 101.] Plaintiffs do not point to evidence that decisions regarding hospital privileges – the issue relevant to this case – are traditionally made by the state, nor that this role was delegated to Defendants by the state. Further, the authority Plaintiffs rely upon for their argument that Defendants engaged in state action because they were entitled to immunity for peer review activities does not support their argument, and the Seventh Circuit Court of Appeals rejected a similar argument as recently as earlier this month. *See Listecki v. Official Committee of Unsecured Creditors*, --- F.3d ----, 2015 WL 1010089, *7 (7th Cir. 2015) (rejecting plaintiff's argument that creditors committee engaged in state action when acting on behalf of creditors because they were entitled to a limited grant of immunity for those actions, and stating "[t]he problem with this argument is that immunity is routinely given to private individuals, Samaritans,…., and parents from tort suits for damages from their minor children….Here, [defendant's] immunity only applies when it is acting on behalf of the creditors, showing us the independence the Committee has from the court and Trustee since it is not subject to their whims or obligated to represent them"). The success of Plaintiffs' argument depends on building a bridge from the simple grant of immunity to a finding of state action, and that bridge is not supported by the case law Plaintiffs cite. The Court cannot find as a matter of law that a grant of immunity for peer review action transforms Defendants' activities here into

state action. The Court does find as a matter of law, however, that this theory is not cognizable in this action.

Accordingly, Plaintiffs' and Defendants' motions for summary judgment as to the state action element of Plaintiffs' § 1983 claims are both **DENIED**.

### B. Whether Plaintiffs Have a Protected Property Interest

Defendants argue in the alternative that even assuming that Defendants are state actors, neither Babchuk, P.C. nor Dr. Babchuk had a federally protected property interest necessary to sustain a due process claim. Specifically, they argue that Babchuk, P.C. has no federally protected property interest because "[t]he decision of a private entity to enter into or to terminate a contract is a private business decision, no[t] deprivation of a federal or constitutional right, and, has no nexus with the State sufficient to constitute state action." [Filing No. 65 at 24.] As to Dr. Babchuk, Defendants contend that he does not have a constitutional right to practice medicine at the hospital he chooses, and that he did not have a legitimate expectation that his privileges at Tipton Hospital would continue indefinitely. [Filing No. 65 at 25.] Defendants also assert that Tipton Hospital's bylaws "expressly informed [Dr.] Babchuk that he had no guarantee to the continued exercise of privileges in the hospital." [Filing No. 65 at 25.]

In their response, Plaintiffs:

- Do not respond to Defendants' argument that Babchuk, P.C. did not have a protected property interest;

- Argue that courts have recognized a constitutionally protected property interest in not being deprived of an issued, blemish-free license without due process, [Filing No. 106 at 31];

- Argue that Dr. Babchuk had a protected property interest in the procedural safeguards provided by Tipton Hospital's bylaws, [Filing No. 106 at 32]; and

- Argue that Dr. Babchuk had a protected property interest in the application of procedural safeguards set forth in Indiana statutes which set forth "a process

which must be afforded to a physician before the physician is reported to the medical licensing board or subject to 'similar disciplinary action,'" [Filing No. 106 at 35].

On reply, Defendants argue that:

- Plaintiffs have waived any argument that Babchuk, P.C. had a constitutionally-protected interest because they did not address that argument in their response brief, [Filing No. 133 at 33-34];

- They have not taken any action against Dr. Babchuk's medical license, so the arguments regarding entitlement to a blemish-free license or procedural safe-guards in licensing actions are inapplicable, [Filing No. 133 at 34-35]; and

- The Tipton Hospital bylaws do not create a constitutionally-protected property interest for Dr. Babchuk, [Filing No. 133 at 35-37].

The right implicated by Plaintiffs' Complaint is the Fourteenth Amendment's Due Process Clause, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Plaintiffs assert a procedural due process claim, which requires them to establish "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." Khan, 630 F.3d at 527. The protected property right or interest must be one in which "he claims to have been denied without due process." Id. Defendants argue that Plaintiffs do not have a federally protected property interest upon which to rest their § 1983 claim.

### 1. Babchuk, P.C.

Defendants argue that Babchuk, P.C. is not a proper party to a § 1983 claim because "[t]he decision of a private entity to enter into or to terminate a contract is a private business decision…." [Filing No. 65 at 24.] Plaintiffs do not address Defendants' argument that Babchuk, P.C. does not have a federally protected interest. [*See* Filing No. 106 at 30-35.] The Court finds that Plaintiffs' failure to respond to Defendants' arguments regarding whether Babchuk, P.C. has a federally pro-tected property interest necessary to sustain a § 1983 claim constitutes waiver of any argument to

the contrary.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond

to an argument – as [Defendants] have done here – results in waiver"); *see also Goodpaster v. City*

*of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013).

In any event, the Court agrees with Defendants that Tipton Hospital's decision to terminate

its contract with Babchuk, P.C. did not constitute the deprivation of a federally protected property

interest.  *See Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983) ("In deciding whether a partic-

ular breach should be deemed a deprivation of property we must bear in mind that the Fourteenth

Amendment was not intended to shift the whole of the public law of the states into the federal

courts.  Most common law wrongs are not actionable under section 1983, though by definition

they involve the deprivation of a legally protected interest….Only interests substantial enough to

warrant the protection of federal law and federal courts are Fourteenth Amendment property inter-

ests"); *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*, 825

F.2d 1404, 1410 (9th Cir. 1987) (holding physicians' group whose contract with hospital was ter-

minated did not have federally protected interest arising from that contract, and stating "[w]e do

not rule that a corporation can never avail itself of section 1983 to protect its purely contractual

rights….It is enough to hold that Physicians' Group's contract to supply medical services to the

state does not confer any constitutionally protectable interest on Physicians' Group.  Its contract

to supply services to the state cannot sensibly be distinguished from construction contracts or even

purely material supply contracts, for purposes of federal protection").

The Court notes that Babchuk, P.C.'s remedy against Defendants is more properly sought

through a breach of contract claim.  *See id.* ("Physicians' Group's remedy, if any, lies in state

law").  Indeed, Babchuk, P.C. has sued some of the Defendants in Indiana state court for breach

of contract.  *See William I. Babchuk, M.D., P.C., et al. v. Tipton Hospital, et al.*, Cause No. 80C01-

1207-PL-000265 (Tipton Circuit Court).  In any event, the Court agrees with Defendants that Bab-chuk, P.C. has not identified a federally protected interest, so its § 1983 claim fails as a matter of law and Defendants are entitled to summary judgment on that claim.

   *2. Dr. Babchuk*

Dr. Babchuk raises a jumble of theories regarding why he had a constitutionally protected property interest.  The Court will address each of Dr. Babchuk's theories in turn.

   a. <u>Protected Property Interest in a Blemish-Free License</u>

Dr. Babchuk's first theory to support the argument that he had a federally protected property interest such that he can sustain a § 1983 claim is that "the Fourteenth Amendment protects an individual from being deprived of an issued, blemish-free professional license without due process." [Filing No. 106 at 31.]  Defendants argue that they have not taken any action against Dr. Babchuk's medical license.  [Filing No. 133 at 34.]

In *Abcarian v. McDonald*, 617 F.3d 931 (7th Cir. 2010), the Seventh Circuit Court of Appeals clarified when a physician who has faced discipline can have a federally protected interest in a blemish-free medical license.  It stated that there can only be a federally protected interest in a blemish-free medical license where "defendants [are] actually able to impose formal disciplinary sanctions and [where defendants are] bound by the relevant substantive decision-making criteria governing the imposition of such sanctions.  Only such defendants may actually 'blemish' a physician's medical license in a constitutionally relevant way." *Id.* at 942.

Here, Dr. Babchuk does not explain how Defendants may have imposed disciplinary sanctions on his medical license nor present any evidence that they have done so.  To be sure, Defendants may have taken part in terminating Dr. Babchuk's privileges at Tipton Hospital, but that act

in and of itself did not affect Dr. Babchuk's medical license. And, to the extent Defendants reported that termination of privileges to any disciplinary body,[3] the Seventh Circuit has explicitly held that the mere reporting of discipline to a body in charge of overseeing medical licenses does not deprive the license-holder of a federally protected property interest in the license. *Abcarian, 617 F.3d at 942.*[4]

The Court also emphasizes that, in any event, Dr. Babchuk has not provided any evidence regarding how his license was actually affected by Defendants' actions and, in turn, how his ability to practice medicine was affected. In fact, a search of the Indiana State Government website, which provides information regarding professional licenses, indicates that Dr. Babchuk holds an active medical license with no "previous action" related to that license. http://www.in.gov/pla/medical.htm (last viewed March 19, 2015).

---

[3] The Court also notes that Defendants' reporting of disciplinary action affecting Dr. Babchuk's privileges was required by law, so could not support a constitutional violation. *See, e.g.*, I.C. § 16-21-2-6 ("The governing board shall report, in writing, to the Indiana medical licensing board the results and circumstances of a final, a substantive, and an adverse disciplinary action taken by the governing board regarding a physician on the medical staff…if the action results in voluntary or involuntary resignation, termination, nonappointment, revocation, or significant reduction of clinical privileges or staff membership").

[4] The Seventh Circuit in *Abcarian* distinguished *Fleury v. Clayton*, 847 F.2d 1229 (7th Cir. 1988), a case relied upon by Dr. Babchuk, [*see* Filing No. 106 at 32]. The *Abcarian* court noted that the defendants in *Fleury* were "members of the state medical disciplinary board that had censured the plaintiff," whereas the defendants in *Abcarian* were the university whose hospital plaintiff practiced at when he was sued for malpractice, and university employees. The *Abcarian* court rejected any attempt to extend *Fleury* to defendants, like Defendants here, who are not "able to impose formal disciplinary sanctions." *Abcarian,* 617 F.3d at 942 ("[T]he language in *Fleury* means only that an Illinois physician has a property interest in a medical license free from formal disciplinary sanction imposed without due process. A physician does not have a due process right to be exempt from the formal disciplinary processes themselves. In other words, the relevant 'blemishes' are actual formal disciplinary sanctions, not the use of formal processes to resolve mere allegations of unprofessional conduct").

Because Defendants here did not – and did not have the power to – impose any sanctions on Dr. Babchuk's medical license,[5] the Court finds that any interest he had in a blemish-free license cannot support a § 1983 claim for violation of procedural due process against Defendants.

b.  Protected Property Interest in Procedures Set Forth in Bylaws

Dr. Babchuk argues that he had a protected property interest in the procedures provided by Tipton Hospital's bylaws once action is taken that affects a physician's exercise of privileges. [Filing No. 106 at 32-33.]  Dr. Babchuk contends that "Indiana courts have expressly held medical staff bylaws will create contractual rights where the bylaws are intended to be binding on both parties," and that Tipton Hospital's bylaws provide "hearing and appeal rights with respect to adverse actions and those rights [that] shall be afforded to the practitioner."  [Filing No. 106 at 33.] Dr. Babchuk argues that although the bylaws do not guarantee his privileges would be renewed indefinitely, Tipton Hospital "was not permitted to terminate them at will."  [Filing No. 106 at 34.] Dr. Babchuk asserts that the bylaws do not permit privileges to be suspended during his two-year privilege term for any reason, but only provide a procedure for "corrective action."  [Filing No. 106 at 34.]  Dr. Babchuk then argues that Defendants "summarily suspended [his] hospital privileges and terminated his membership though it had no credible claim that the allegations against him required immediate suspension in the interest of patient care or safety."  [Filing No. 106 at 35.]

_____

[5] The others cases Dr. Babchuk relies upon for his "blemish-free license" argument are similarly inapposite – either because the defendants were the individuals or bodies actually imposing the sanctions, or because they arose in different contexts.  *See Lowe v. Scott*, 959 F.2d 323 (1st Cir. 1992) (physician whose privileges were suspended sued state Board of Medical Licensure and Discipline); *Bell v. Burson*, 402 U.S. 535 (1971) (individual whose driver's license was suspended sued the director of the state department of public safety, the body which had suspended the license); *Butchers' Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co.*, 111 U.S. 746 (1884) (finding that the right to seek any occupation is an inalienable right, but not in the context of a professional license).

Defendants argue that the bylaws do not create a protected property interest in Dr. Babchuk's privileges at Tipton Hospital, and that the cases Dr. Babchuk relies upon are all irrelevant because they either involved a hospital employee or government employee, and Dr. Babchuk was neither. [Filing No. 133 at 35-36.] Accordingly, they argue, Dr. Babchuk's privilege relationship with Tipton Hospital was not a constitutionally protected property interest. [Filing No. 133 at 37.]

Property interests are not created by the Fourteenth Amendment, but rather are "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). A property interest in employment that is constitutionally protected "can arise from a statute, regulation, municipal ordinance, or an express or implied contract." *Price v. Board of Educ. of City of Chicago*, 755 F.3d 605, 607-08 (7th Cir. 2014) (quotations and citations omitted). The protected interest, however, cannot be derived from the Due Process Clause. *Id.*

Here, Dr. Babchuk argues that he has a federally protected interest in due process (*i.e.*, the procedures set forth in the bylaws), not that he has a federally protected property interest in being on the staff at Tipton Hospital. [*See* Filing No. 135 at 2, n.1 (Plaintiffs stating "Defendants, in their motion for summary judgment argue Dr. Babchuk cannot establish 'a federally protected right to be on the medical staff at Tipton, or that his P.C. had [a] 'federally protected right to its contract.''…Dr. Babchuk never made these arguments. Instead, his position is that he had a federally protected right to due process (timely notice and fair hearing) before defendants summarily suspended him and that Dr. Babchuk has a state and federal property right to his privileges and his clean, unblemished license").] But the fundamental flaw in Dr. Babchuk's argument is that he relies on the due process clause to give him a protected property interest. This stands the due

process analysis on its head:  Dr. Babchuk must *first* have a federally protected property interest, and then that property interest is entitled to due process protection.  He cannot have a federally protected property interest *because* the property interest is entitled to due process protection (provided by the bylaws or otherwise).

Dr. Babchuk has not pointed to any Seventh Circuit Court of Appeals cases recognizing a constitutionally-protected property interest in the procedures provided in hospital bylaws for the suspension or revocation of medical staff privileges.  The Seventh Circuit came close to addressing the issue in *Draghi v. County of Cook*, 184 F.3d 689 (7th Cir. 1999). There, plaintiff was "provisionally appointed" as a physician and, while in his 6-month probationary period, was suspended. After a hearing which was reviewed by different committees, his provisional appointment was terminated.  In connection with plaintiff's procedural due process claim, the Court considered whether the bylaws created a property interest in his provisional appointee status. The court found that the bylaws did not create a property interest because they did not create a legitimate expectation of employment on plaintiff's part – either for the rest of his provisional appointment or beyond.  *Id.* at 691-93.  The plaintiff in *Draghi*, however, did not argue that he had a property interest in the procedures provided in the bylaws, so the Seventh Circuit did not consider that issue.

Dr. Babchuk cites to cases from other circuits which he asserts recognize that a physician has a protected property interest in the continuation of hospital privileges for their entire term, based on the physician's right to the procedural safeguards set forth in the bylaws.  [Filing No. 106 at 32-34.]   But none of those cases hold that there is a protected property interest in the *process* provided by the bylaws, and some of them involved factually distinct situations in any event.  *See Lowe v. Scott*, 959 F.2d 323 (1st Cir. 1992) (dealt with revocation of medical license, not hospital privileges); *Shahawy v. Harrison*, 875 F.2d 1529 (11th Cir. 1989) (holding medical staff privileges

were a protected property interest, but not holding the procedures created by the bylaws to be followed when corrective action is taken against a physician were); *Northeast Georgia Radiological Associates, P.C. v. Tidwell*, 670 F.2d 507 (5th Cir. 1982) (holding medical staff privileges constituted a property interest, but not considering whether bylaws' procedures for suspending or revoking those privileges were an interest); *Osuagwu v. Gila Reg'l Med. Ctr.*, 938 F.Supp.2d 1142 (D.N.M. 2012) (same principle); *Tremblay v. Delaware County*, 2005 WL 1126960, *6 (E.D. Pa. 2005) (finding "support for the claim that [plaintiff] may have a property interest in his appointment to the [medical staff]," but not considering whether he had a property interest in the procedure created to govern that appointment).[6]

Dr. Babchuk explicitly disclaims that he is arguing that he has a protected property interest in his privileges, or their continuation for the two-year period. This may be because the Seventh Circuit – unlike the out-of-circuit cases cited by Dr. Babchuk – has expressed skepticism with this argument. In *Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337 (7th Cir. 1987), the Seventh Circuit discussed whether a physician had a property interest in remaining on hospital staff once privileges were granted. Plaintiffs there argued that their situation was analogous to a tenured state employee, who the Supreme Court has recognized has a property interest in their position because tenure can only be revoked for good cause. *Id.* at 1344. The Seventh Circuit noted that "[s]ome

_____

[6] Dr. Babchuk also argues that "Indiana courts have expressly held medical staff bylaws will create contractual rights where the bylaws are intended to be binding on both parties." [Filing No. 106 at 33.] But the cases he cites at most support a breach of contract claim, and did not address whether the procedures in the bylaws constitute a constitutionally protected property interest. *See, e.g.*, *Pepple v. Parkview Memorial Hosp., Inc.*, 536 N.E.2d 274 (Ind. 1989) (did not consider the question of whether physician's privileges are a protected property interest); *Porter Memorial Hosp. v. Malak*, 484 N.E.2d 54 (Ind. Ct. App. 1985) (plaintiff did not assert a constitutional violation of due process claim); *Terre Haute Regional Hosp., Inc. v. El-Issa*, 470 N.E.2d 1371, 1377 (Ind. Ct. App. 1984) (physician brought breach of contract claim against hospital for failing to comply with bylaws in denying him privileges, but not constitutional claim).

contracts create property rights – tenure contracts have been held to do so as we have said – but it would be surprising to equate every contractual entitlement to a property right. We doubt that a contract entitling a doctor or other professional to hospital staff privileges during good behavior should be equated for constitutional purposes to a contract entitling a public school teacher to retain his job during good behavior." *Id.*; *see also Daly v. Sprague*, 675 F.2d 716, 727 (7th Cir. 1982) (when a physician enjoys hospital staff privileges at the discretion of the hospital, termination of those privileges is not the deprivation of a protected property interest); *Lim v. Central DuPage Hosp.*, 871 F.2d 644, 646 (7th Cir. 1989) ("If [plaintiff's] staff privileges had been terminated in the middle of his first year or of any annual reappointment, he could argue…that he had been deprived of a property right. The argument might well fail. We expressed skepticism…that the termination of hospital staff privileges is a deprivation of property, pointing out that, if it were, this would make every contract right a property right"). Dr. Babchuk's attempt to end-run these cases by arguing that he has a protected property interest in the process set forth to protect his privileges is unavailing.

The Court finds as a matter of law that Dr. Babchuk does not have a federally protected property interest in the process created by Tipton Hospital's bylaws or the Medical Staff bylaws to govern the suspension or revocation of staff privileges.

### c. Protected Property Interest in Procedures Set Forth in State Law

Finally, Dr. Babchuk argues in his response that he has a property interest in the application of procedural safeguards set forth in Indiana statute. [Filing No. 106 at 35-36.] Dr. Babchuk relies specifically on Indiana Code § 34-30-15-5 which, similar to the bylaws, provides a detailed process which a hospital must provide when "charges are brought against a professional health care provider in a hospital that, if sustained by the governing board of the hospital, could result in an action

against a physician required to be reported to the medical licensing board…." I.C. § 34-30-15-5.

Dr. Babchuk argues that, under Indiana law, he "was entitled by statute to an evidentiary hearing before a peer review committee of the medical staff and one appeal before adverse action was taken," that he "was not even apprised that charges [had] been made against him before he was summarily suspended and the Services Agreement was terminated," and that he "was given no fair hearing before his suspension was reported…." [Filing No. 106 at 36.] On reply, Defendants argue generally that Indiana law does not provide a basis for a constitutional claim here.

Any argument that there is a property interest in the procedure set forth in Indiana statute fails for the same reasons that Dr. Babchuk's bylaw argument fails. Again, this argument ignores the fact that an independent property interest is needed in order to trigger entitlement to the due process set forth in the statute. The due process cannot, itself, be the protected interest. *See Olim v. Wakinekona*, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) ("[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a claim of entitlement….The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right"); *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance"); *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982) ("Constitutionalizing every state procedural right would stand any due process analysis on its head"); *Indiana Land Co. LLC v. City of Greenwood*, 2003 WL 22208795, *5 (S.D. Ind. 2003) ("Deprivation of a property interest in violation of state law…is not itself a violation of the Constitution….Federal courts lack the authority to direct state officials to comply with state

law") (internal citations omitted).[7]  The Court rejects Dr. Babchuk's argument that he had a federally protected property interest in the process provided by Indiana statute for the suspension or revocation of hospital staff privileges.

In sum, the Court finds as a matter of law that – even assuming Defendants are state actors – neither Babchuk, P.C. nor Dr. Babchuk have identified a constitutionally protected interest that would support their Fourteenth Amendment due process claims.  Defendants' decision to terminate the contract with Babchuk, P.C. did not constitute deprivation of a federally protected property interest.  Further, Dr. Babchuk cannot rest a federal due process claim on an entitlement to a blemish free license – Defendants took no action against his license here, nor did they have the authority to do so.  Additionally, Dr. Babchuk does not have a federally protected property interest in the process created either by the bylaws or by Indiana statute for reviewing decisions to suspend or revoke hospital privileges, nor does he have a federally protected property interest in the continuation of his privileges at Tipton Hospital for the entire two-year term.  While Plaintiffs may well be entitled to seek a state law remedy for Defendants' actions or inactions, a federal due process claim is not the proper avenue for doing so.

---

[7] Similar to the cases Dr. Babchuk relied upon to support his bylaws argument, the cases he cites for his proposition that "Indiana law recognizes that individuals have vested property rights in the application of procedural safeguards contained in policy manuals where those procedures are dictated by state statute," [Filing No. 106 at 35-36], are inapposite.  *See Panozzo v. Rhoads*, 905 F.2d 135 (7th Cir. 1990) (defendant conceded that retaining position as a police officer was a constitutionally protected property interest, and court agreed); *Wells v. Auberry*, 476 N.E.2d 869 (Ind. Ct. App. 1985) (holding employee had protected property interest in continuing employment, and not considering whether she had a protected property interest in the process put in place to protect that interest); *Tidwell*, 670 F.2d at 511 (holding physician had protected property interest in staff privileges, but not holding there was a protected property interest in the process provided by hospital's bylaws).

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, [Filing No. 64], to the extent that it finds as a matter of law that Plaintiffs did not have a constitutionally protected interest that would support their Fourteenth Amendment due process claims. Additionally, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment, [Filing No. 100], and **DENIES** Plaintiffs' Request for Oral Argument, [Filing No. 103]. Because the resolution of Defendants' motion resolves all federal claims brought by Plaintiffs, final judgment consistent with this entry shall issue.

Date: March 20, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**